IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
STEVEN M. JOHNSON, PC,          §
DBA THE JOHNSON LAW FIRM,       §
                                §
              Plaintiff,        §
                                §
VS.                             §    NO. 4:14-CV-611-A
                                §
WILLIAM DRAKE,                  §
                                §
              Defendant.        §
```

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above action the combined motions of defendant, William Drake, to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue, or alternatively, to transfer venue. Plaintiff, Steven M. Johnson, PC, d/b/a The Johnson Law Firm, filed a response, and defendant filed a reply. Having considered all of the parties' filings, plaintiff's first amended original complaint, as well as the applicable legal authorities, the court concludes that this action should be dismissed because of the failure of plaintiff to establish the court's in personam jurisdiction over defendant.[1]

---

[1]Although a federal court normally resolves doubts about its jurisdiction over subject matter before addressing personal jurisdiction, the United States Supreme Court has recognized that "there is no unyielding jurisdictional hierarchy." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999). Because in personam jurisdiction is so clearly absent here, the court will resolve that issue first.

I.

## Nature of Litigation

Plaintiff alleged that subject matter jurisdiction exists by reason of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.  Specifically, the amended complaint alleged that plaintiff is a citizen of Texas and defendant is a citizen of Minnesota.  Although the amended complaint discussed the basis of plaintiff's contention concerning the amount in controversy, and also gave the reasons plaintiff contended that venue was proper in the Northern District of Texas, no specific statement of the court's in personam jurisdiction is found in the amended complaint.

As to the factual allegations of the amended complaint, plaintiff contended that defendant previously had a defective product surgically implanted into his body, which defendant claimed caused him personal injuries.  On or about January 24, 2012, plaintiff and defendant entered into a written contract titled "Attorney Representation Agreement" ("Contract").[2]

---

[2]The amended complaint refers to the Attorney Representation Agreement as the "Contract." For consistency, the court will do likewise.

The Contract provided for a contingent fee of forty percent of all sums recovered on defendant's claims, plus all costs and expenses advanced by plaintiff, and a lien on defendant's claims, proceeds, or judgments recovered in connection therewith.   The Contract included a Texas choice-of-law provision, and provided that all disputes between plaintiff and defendant arising out of the Contract would be resolved through arbitration in Fort Worth, Texas.   On or about November 30, 2012, defendant sent written notice to plaintiff terminating plaintiff's representation under the Contract.

Plaintiff's amended complaint included an application to compel arbitration, and alternative request for a declaratory judgment that plaintiff is entitled to recover forty percent of all sums recovered on defendant's claims related to the defective product.

## II.

### Grounds of Defendant's Motion

In his motion, defendant first asserted that this action should be dismissed because the court lacks personal jurisdiction over him.   Defendant additionally argued that subject matter jurisdiction is lacking because this action is not ripe for adjudication, and because plaintiff cannot establish the requisite amount in controversy.   Finally, defendant maintained

that this action should be dismissed because venue is not proper in this district, or, if not dismissed, the action should be transferred to the Northern District of Ohio where the multi-district litigation panel has consolidated all cases involving the alleged defective product that is the subject of defendant's underlying claim.

### III.

### Analysis

A.   Law Applicable to Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994); Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; at this stage,[3] prima facie evidence of personal jurisdiction is sufficient. WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, exhibits, any part of the record, and any combination thereof. Command-Aire Corp. v. Ontario Mech. Sales &

---

[3] Eventually, plaintiff must prove by a preponderance of the evidence that jurisdiction exists. See DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1271 n.12 (5th Cir. 1983).

Serv., Inc., 963 F.2d 90, 95 (5th Cir. 1992). Allegations of the
plaintiff's complaint are taken as true except to the extent that
they are contradicted by defendant's affidavits. Wyatt, 686 F.2d
at 282-83 n.13 (citing Black v. Acme Mkts., Inc., 564 F.2d 681,
683 n.3 (5th Cir. 1977)). Any genuine, material conflicts
between the facts established by the parties' affidavits and
other evidence are resolved in favor of plaintiff for the
purposes of determining whether a prima facie case exists. Jones
v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1067
(5th Cir. 1992); Bullion v. Gillespie, 895 F.2d 213, 217 (5th
Cir. 1990).

In a diversity action, personal jurisdiction over a
nonresident may be exercised if (1) the nonresident defendant is
amenable to service of process under the law of a forum state,
and (2) the exercise of jurisdiction under state law comports
with the due process clause of the Fourteenth Amendment. Wilson,
20 F.3d at 646-47; Thompson v. Chrysler Motors Corp., 755 F.2d
1162, 1166 (5th Cir. 1985) (quoting Smith v. DeWalt Prods. Corp.,
743 F.2d 277, 278 (5th Cir. 1984)). Since the Texas long-arm
statute has been interpreted as extending to the limits of due
process,[4] the only inquiry is whether the exercise of

---

[4] See, e.g., Guardian Royal Exchange Assurance Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991); Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990).

jurisdiction over the nonresident defendant would be
constitutionally permissible.  <u>Bullion</u>, 895 F.2d at 216; <u>Stuart</u>,
772 F.2d at 1189.

For due process to be satisfied, (1) the nonresident
defendant must have "minimum contacts" with the forum state
resulting from an affirmative act on the defendant's part, and
(2) the contacts must be such that the exercise of jurisdiction
over the person of the defendant does not offend "traditional
notions of fair play and substantial justice."  <u>Int'l Shoe Co. v.
Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>,
311 U.S. 457, 463 (1940)).

The minimum contacts prong of the due process requirement
can be satisfied by a finding of either "specific" or "general"
jurisdiction over the nonresident defendant.  <u>Bullion</u>, 895 F.2d
at 216.  For specific jurisdiction to exist, the foreign
defendant must purposefully do some act or consummate some
transaction in the forum state and the cause of action must arise
from or be connected with such act or transaction.  <u>Burger King
Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).  Even if the
controversy does not arise out of or relate to the nonresident
defendant's purposeful contacts with the forum, general
jurisdiction may be exercised when the nonresident defendant's
contacts with the forum are sufficiently continuous and

systematic as to support the reasonable exercise of jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state. Jones, 954 F.2d at 1068.

The second prong of the due process analysis is whether exercise of jurisdiction over the nonresident defendant would comport with traditional notions of fair play and substantial justice. International Shoe, 326 U.S. at 316. Once the plaintiff establishes the existence of minimum contacts, the defendant then has the burden to show that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

B.   Evidence Presented by the Parties on the In Personam Issue

1.   Jurisdictional Facts in Defendant's Declaration

Defendant is a resident of the state of Minnesota, where he has lived for thirty-nine years. Defendant has never lived or conducted business in the state of Texas, and, aside from an airport layover of a few hours, has never been to Texas.

The underlying claim for which plaintiff is seeking fees concerns a Johnson & Johnson DePuy ASR hip replacement implanted in defendant in a hospital in Woodbury, Minnesota.  In late 2011, defendant was watching television in his home in Minnesota and saw an advertisement for a lawsuit involving that same product. Defendant's wife, Andrea Drake ("Andrea"), called the number and gave defendant's information.  Defendant did not know where the law firm he called was located.

Soon thereafter defendant received an information packet from plaintiff.  Defendant was under the impression that plaintiff was the sole or primary attorney handling the class action against Johnson & Johnson, and that plaintiff was the only attorney who could represent defendant in that litigation.  Over the course of the next few weeks defendant received several calls from plaintiff; plaintiff eventually told defendant it was urgent that defendant sign and return the papers plaintiff sent him, as the time to bring a complaint was running out.  Plaintiff signed the Contract[5] in January 2012, in Minnesota, and returned the document to plaintiff via United States mail.

Several weeks after defendant signed the Contract someone

---

[5]Defendant's declaration states that he signed the "complaint." However, consistent with plaintiff's affidavit and the record in this action, it appears this is a misstatement, and that defendant was referring to the Contract.

8

from plaintiff's law firm called defendant asking about
defendant's original surgery.  Thereafter, defendant made a
number of calls to plaintiff, but received little response, and
received few updates regarding his case.  Defendant was unhappy
with the lack of updates and with the representation provided by
plaintiff, and was also dissatisfied with the methods plaintiff
used to gain his business.  Defendant learned that plaintiff was
not the only attorney handling DePuy ASR claims, and decided he
wanted a local attorney.  Accordingly, on or around November 29,
2012, defendant terminated the Contract with plaintiff, and sent
written correspondence to that effect through his new counsel.

Defendant's hip was not revised at the time he terminated
the Contract.  As of the date defendant signed the declaration,
there has been no final settlement in his case, and he has
received no recovery as a result of the litigation.

   2.   Jurisdictional Facts in Plaintiff's Affidavit

In September 2010, after defendant contacted plaintiff in
Texas regarding the DePuy ASR litigation, plaintiff sent a packet
of information to defendant.  In October 2010, defendant mailed
to plaintiff in Fort Worth copies of documents defendant had
received from DePuy's agent concerning his claims.  Plaintiff
replied by mail.  On October 18 and November 3, 2010, plaintiff
telephoned defendant concerning defendant's possible claims and

9

physical condition.  On November 12, December 9, and December 17, 2010, plaintiff mailed updated information to defendant.

On November 23, 2010, plaintiff phoned defendant for a follow-up conversation but had to schedule another follow-up call.  On December 21, 2010, and January 4 and 17, 2011, plaintiff initiated telephone conversations with Andrea and/or defendant.  Plaintiff mailed additional information to defendant on May 9 and June 6, 2011, and contacted defendant by phone on July 22, 2011, concerning the packet plaintiff sent him.  On January 19, 2012, plaintiff mailed a request for updated information to defendant.  Defendant mailed his packet, including the signed Contract, back to plaintiff's office in Texas around January 24, 2012.

On March 9, 2012, plaintiff mailed a confirmation of receipt of the packet to defendant.  Plaintiff telephoned defendant on April 26, 2012, and October 26, 2012, and had telephone contact with Andrea on November 27, 2012, regarding updates on defendant's case.

On November 28, 2012, Andrea telephoned plaintiff and advised that defendant was scheduled for a revision on December 17, 2012, and that they were considering moving their case to a local attorney friend.  On December 5, 2012, defendant called plaintiff and advised that he had decided to use a local

attorney.  On December 6, 2012, plaintiff received a letter from
defendant's new counsel, terminating plaintiff's representation.

C.   Application of the Law to the Facts of This Action

Plaintiff is contending that the court has both specific and
general jurisdiction over defendant.  However, plaintiff has
failed to make the required showing as to either.

The court begins with a discussion of well-settled
principles concerning the minimum contacts and specific
jurisdiction.  It is well established that "[t]he unilateral
activities of those who claim some relationship with a
nonresident defendant cannot satisfy the requirement of contact
with the forum State."  Patterson v. Dietze, Inc., 764 F.2d 1145,
1147 (5th Cir. 1985).  Likewise, "merely contracting with a
resident of the forum state is insufficient to subject the
nonresident to the forum's jurisdiction."  Holt Oil & Gas Corp.
v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986) (citing Colwell
Realty Invs. v. Triple T Inns, 785 F.2d 1330, 1334 (5th Cir.
1986)); Stuart, 772 F.2d at 1192-93.

The exchange of communications between a resident and
nonresident while developing a contract and the fact that a
contract exists between the nonresident defendant and a resident
of the forum state are also insufficient to establish the
necessary minimum contacts.  See, e.g., Holt, 801 F.2d at 778 (no

specific jurisdiction over nonresident defendant who entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); <u>Hydrokinetics, Inc. v. Alaska Mech., Inc.</u>, 700 F.2d 1026, 1029 (5th Cir. 1983) (exchange of communications between Texas and Alaska in the development of a contract insufficient to establish specific jurisdiction); <u>Stuart</u>, 772 F.2d at 1192-94 (finding no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, and shipped prototypes and products to Texas).

Application of the foregoing authorities to the facts now before the court make clear that plaintiff has failed to establish specific jurisdiction. The only contacts alleged between defendant and Texas occurred during the period of time plaintiff was attempting to secure a representation agreement with defendant, and a few after defendant signed the Contract. All of defendant's contacts with Texas fall within the type that the Fifth Circuit has held insufficient to establish specific jurisdiction, and are even less than those in the above-referenced cases where specific jurisdiction was found lacking.

In support of his contention that specific jurisdiction exists, plaintiff argued that defendant "purposefully consummated

the Contract in Texas, and Plaintiff's claim arises directly from Defendant's breach of that Contract." Pl.'s Br. at 14. However, defendant in his declaration maintained that he signed the Contract in Minnesota, and plaintiff has adduced no controverting evidence. Indeed, plaintiff's affidavit is consistent with defendant's contentions, as he averred that defendant mailed the signed Contract from Minnesota to Texas. Nor does plaintiff explain how defendant purportedly breached the Contract, as it is undisputed that defendant has not yet received any settlement funds as a result of his participation in the DePuy litigation, so there is no fee to receive. And if plaintiff is contending that defendant breached the Contract by terminating the representation, he has directed the court to no provision therein prohibiting or in any way restricting defendant from doing so.

Plaintiff fares no better in attempting to show general jurisdiction, bearing in mind that the contacts necessary to establish general jurisdiction must be substantially greater than those necessary for specific jurisdiction. Plaintiff summarizes the nature of defendant's contacts supporting general jurisdiction as follows:

> During the sixteen (16) months prior to contracting with Plaintiff, beginning in September of 2010, Defendant had eighteen (18) contacts with Plaintiff's law firm, nine (9) by phone, and nine (9) by U.S. mail. Between September 28, 2010 and January 19, 2012,

> Plaintiff sent at least eight documents to Defendant on
> Plaintiff's law firm letterhead identifying the law
> firm as located in Ft. Worth, Texas.  As early as
> October 8, 2010, Defendant mailed information to
> Plaintiff properly addressed to Plaintiff's address in
> Ft. Worth, Texas.

Pl.'s App. at 7.  As an initial matter, it is undisputed that

plaintiff, through his television advertisement, reached out to

defendant in Minnesota.  This is not a case where defendant

initiated contact with plaintiff in Texas as a result of

defendant's desire to pursue litigation in Texas.  And nothing in

plaintiff's affidavit contradicts defendant's assertion that he

was unaware of plaintiff's location when Andrea made the first

phone call to plaintiff.  From defendant's perspective, he could

have been calling anywhere in the United States, rather than

purposefully reaching out to Texas.  That plaintiff happened to

reside in Texas does not support in personam jurisdiction.  Holt,

801 F.3d at 778.

Nor do the raw numbers cited above give the full picture of

defendant's purported contacts: of the eighteen contacts

plaintiff alleged occurred between he and defendant, plaintiff

appears to have originated all but a very few.  Plaintiff cannot

rely on his own contacts with defendant to establish the contacts

necessary for personal jurisdiction.  Plaintiff's contacts with

defendant do not show that defendant had continuous and

systematic contact with the forum state.  In any event,
plaintiff's focus on the number of contacts misses the point: the
court is to be concerned not with the number of contacts, but
instead with the quality and nature of the activity pertaining to
the forum state.  <u>Stuart</u>, 772 F.2d at 1194.  The quality and
nature of defendant's contacts here are minimal, at best, and do
not support the exercise of general jurisdiction over defendant.

Plaintiff also focuses on the Texas choice-of-law provision
in the Contract as supporting general jurisdiction.  However, the
Supreme Court noted that, although relevant, a choice-of-law
provision "standing alone" would be insufficient to confer
personal jurisdiction.  <u>Burger King</u>, 471 U.S. at 482.  The Court
in <u>Burger King</u> found that the choice-of-law provision supported
the exercise of <u>in personam</u> jurisdiction in conjunction with the
numerous, substantive contacts with the forum initiated by the
nonresident defendant, including the extensive negotiations
between the parties, as well as the "20-year interdependent
relationship" established by the parties' contract.

Nothing of the sort is alleged here.  It is undisputed that
defendant was seeking an attorney to represent him in conjunction
with a possibly defective hip implant; there was no prior
relationship between the parties, no long-term "interdependent"
relationship anticipated, and no other deliberate affiliations

15

with Texas on the part of defendant as would cause him to reasonably anticipate being haled into a Texas court.  Nor was anything in the Contract, including the choice-of-law and arbitration provisions, the result of arms-length negotiations between equally-situated parties, or any negotiations whatsoever.

All of the foregoing leads to but one conclusion: plaintiff has failed to show that defendant had sufficient contacts with Texas to establish the court's <u>in personam</u> jurisdiction over defendant.  Accordingly, the court is dismissing this action for lack of personal jurisdiction.

* * * *

The court has considered the remaining grounds raised in the combined motions, and finds that they appear meritorious. However, given the court's disposition of this action as discussed above, the court finds it unnecessary to further address those grounds in this memorandum opinion and order.

IV.

<u>Order</u>

For the reasons given above,

The court ORDERS that defendant's motion to dismiss for lack of personal jurisdiction be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Steven M. Johnson, PC, d/b/a The Johnson Law Firm, against defendant,

16

William Drake, be, and are hereby, dismissed for lack of <u>in personam</u> jurisdiction.

SIGNED November 25, 2014.

JOHN MCBRYDE
United States District Judge